**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **M.A.R.S. CLEANING SERVICES, LLC** | § | **CIVIL ACTION NO. 2:19-cv-02354** |
| | § | |
| **v.** | § | **SECTION "A"** |
| | § | **JUDGE JAY C. ZAINEY** |
| **TERREBONNE PARISH** | § | |
| **CONSOLIDATED GOVERNMENT** | § | **DIVISION "2"** |
| | § | **MAGISTRATE JUDGE JOSEPH C.** |
| | § | **WILKINSON, JR.** |
| | § | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6)</u>**

## TABLE OF CONTENTS

Page

I.   Background ...................................................................................................................1

II.  Law & Argument .........................................................................................................4

   A.   Rule 12(b)(1) Standard ..........................................................................................4

   B.   Rule 12(b)(6) Standard ..........................................................................................5

   C.   The due process claim should be dismissed because it is not justiciable, and
        even if it were, Plaintiff fails to allege facts necessary to state a plausible due
        process claim. ......................................................................................................6

      1.   The due process claim is not justiciable because Plaintiff lacks standing and the
           claim is not ripe.............................................................................................. 6

      2.   Plaintiff fails to allege a due process violation........................................... 10

   D.   The takings claim should be dismissed because it is not justiciable, and even if
        it were, Plaintiff fails to allege facts necessary to state a plausible takings claim. ......12

      1.   The takings claim is not justiciable because Plaintiff lacks standing and the claim
           is not ripe. .................................................................................................... 12

      2.   Plaintiff fails to allege that any property has been taken............................ 13

   E.   The equal protection claim should be dismissed because Plaintiff fails to allege
        facts necessary to state a plausible claim.............................................................14

      1.   The class-of-one equal protection claim is unavailable because the Parish's
           decision was discretionary. .......................................................................... 15

      2.   Plaintiff fails to allege any improper motive as required for a selective
           enforcement class-of-one equal protection claim. ...................................... 17

      3.   Even under the traditional test, Plaintiff fails to allege sufficient facts to state a
           plausible class-of-one equal protection claim. ........................................... 18

   F.   The declaratory judgment and injunction claims should be dismissed because
        the Court lacks jurisdiction or, alternatively, should decline jurisdiction..................20

      1.   The declaratory judgment claims should be dismissed. ............................. 20

      2.   The claim for injunctive relief should be dismissed.................................... 24

III. Conclusion ..................................................................................................................25

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6)**

M.A.R.S. Cleaning Services, LLC ("Plaintiff" or "MARS Cleaning") asserts several constitutional violations and claims for declaratory and injunctive relief in connection with a permit application and variance approved by Defendant Terrebonne Parish Consolidated Government (the "Parish") to operate a hazardous waste facility. But the permit that Plaintiff sought has been issued, and Plaintiff does not sufficiently allege any likelihood of future injury. Its due process, takings, and declaratory and injunction claims should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff also fails to allege sufficient facts to support its class-of-one equal protection claim, and that claim should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

## I.      Background

This lawsuit arises out of Plaintiff's application for a permit and variance to operate a facility to decontaminate marine assets containing naturally occurring radioactive material ("NORM"). Plaintiff alleges that it applied for a permit to construct and operate a NORM decontamination facility in August of 2017 under Terrebonne Parish Code of Ordinances § 11-51, *et seq.* ("TP Ordinances").[1] Because Plaintiff planned to locate the facility within one mile of another structure, which is prohibited under TP Ordinances § 11-56, Plaintiff also sought a variance under TP Ordinances § 11-64.[2] That provision provides that a variance shall be issued solely at the discretion of the Terrebonne Parish Council and only upon:

(1) A showing of good and sufficient cause;

---

[1]      Am. Compl. ¶ 16 (R. Doc. 5). Plaintiff filed an Amended and Superseding Complaint that superseded the original complaint and realleged the lawsuit in its entirety. So references to Plaintiff's allegations are from the amended complaint.

[2]      Am. Compl. ¶ 17 (R. Doc. 5).

1

(2) A determination that failure to grant the variance would result in exceptional hardship to the applicant;

(3) A determination that the granting of a variance would not have the effect of nullifying the intent and purpose of this article.

TP Ordinances § 11-64.

After a public meeting where two citizens opposed its permit application due to risk of water contamination, Plaintiff alleges that one councilwoman moved to continue the vote on the permit application to allow another public meeting to be held outside of the regularly scheduled council meetings.[3] Plaintiff alleges that a public meeting was held in October 2017 where representatives of Plaintiff and Terrebonne Parish Consolidated Waterworks spoke and some residents brought a flier containing false and defamatory statements regarding Plaintiff's proposed facility.[4] According to Plaintiff's conclusory and speculative allegation, the flyer, "*upon information and belief*, was disseminated by representatives of Parish government."[5] The permit application was denied at an October 25, 2017 council meeting.[6]

Plaintiff later submitted another application in 2018, which was considered at the November 28, 2018 public hearing.[7] At that hearing, the permit application and the one-mile setback variance were approved and the permit was issued just over a week later on December 7, 2018.[8] Plaintiff does not allege that the Parish has revoked or suspended the permit. In fact, Plaintiff is now proceeding with construction of its facility.[9]

While Plaintiff attempts to claim that the Parish is threatening to revoke the permit and that it treated Plaintiff differently than similarly situated permit applicants, the well-pleaded

---

[3]     Am. Compl. ¶¶ 24-25 (R. Doc. 5).
[4]     Am. Compl. ¶¶ 26-28 (R. Doc. 5).
[5]     Am. Compl. ¶ 26 (R. Doc. 5) (emphasis added).
[6]     Am. Compl. ¶ 36 (R. Doc. 5).
[7]     Am. Compl. ¶¶ 37, 42 (R. Doc. 5).
[8]     Am. Compl. ¶¶ 44, 46, 51 (R. Doc. 5).
[9]     Am. Compl. ¶ 52 (R. Doc. 5).

factual allegations do not support those speculative conclusions. Plaintiff alleges that after the November 2018 meeting, the Parish president stated his intention to veto the approval, but Plaintiff also recognizes that the Parish president lacks the authority to do so.[10] Plaintiff also alleges that the president expressed concern that the permit was "procedurally incorrect" and that he would attempt to invalidate it.[11] But Plaintiff does not allege that the president has authority to do so or that the Parish has taken any steps to invalidate the permit. Plaintiff's allegation that it is similarly situated to other applicants who were treated differently is a bare assertion that cannot be assumed true when Plaintiff fails to identify any other applicants who were also seeking to decontaminate NORM, who also requested a variance, and who were similarly situated with respect to the discretionary considerations relevant to whether a variance may be granted.[12]

After its original permit application was denied, Plaintiff filed a lawsuit in Louisiana state court in Terrebonne Parish claiming that the denial of its application was improper and requesting (i) declarations that it is not required to obtain a hazardous waste permit or that the Parish is preempted from regulating NORM by Louisiana state law and (ii) an injunction prohibiting the Parish from requiring Plaintiff to obtain a permit to operate its facility.[13] But after its permit was approved and issued, Plaintiff later filed this suit asserting that the Parish's actions violated the U.S. Constitution's equal protection, due process, and takings clauses and seeking the same declarations and injunction it is seeking in its state court suit.[14] In addition, the Louisiana Environmental Action Network ("LEAN") and Barbara Gibson filed a lawsuit in state court against the Parish alleging that the approval of Plaintiff's application and variance violated

---

[10]    Am. Compl. ¶ 47 (R. Doc. 5).
[11]    Am. Compl. ¶ 48 (R. Doc. 5).
[12]    Am. Compl. ¶ 59-60 (R. Doc. 5).
[13]    MARS Cleaning's State Court Pet. ¶¶ 38-52, Prayer, attached as Exhibit 1.
[14]    Am. Compl. ¶¶ 56-84 (R. Doc. 5).

Louisiana's Open Meeting Law. Plaintiff has intervened in that lawsuit.[15] And while Plaintiff complains that the Parish has not disclosed its plans for responding to the LEAN lawsuit, Plaintiff has not alleged any basis for the Parish to waive privilege and reveal its privileged trial strategy from another lawsuit.[16]

## II.    Law & Argument

### A.  Rule 12(b)(1) Standard

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. To survive the motion, Plaintiff must establish that this Court has jurisdiction. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Dismissals for lack of constitutional standing or ripeness are granted pursuant to Rule 12(b)(1). *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017); *Waller v. Hanlon*, 922 F.3d 590, 603 n.5 (5th Cir. 2019) (noting that ripeness implicates the district court's subject-matter jurisdiction). The court has the power to dismiss a case for lack of subject matter jurisdiction based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (2) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Moore*, 853 F.3d at 248.

When motions under Rule 12(b)(1) and Rule 12(b)(6) are presented together, courts should determine whether they have subject matter jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (reminding federal courts to resolve jurisdictional issues before addressing the merits and noting that failing to do so "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers").

---

[15]      MARS Cleaning's Motion for Leave to Intervene in the LEAN lawsuit, the Petition in Intervention, and the Order granting the motion are attached *in globo* as Exhibit 2.

[16]      Am. Compl. ¶ 55 (R. Doc. 5).

**B.  Rule 12(b)(6) Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Naked assertions devoid of further factual enhancement do not suffice. *Id.* Instead, the factual allegations must be enough to nudge the plaintiff's claims "across the line from conceivable to plausible;" they must present more than "a sheer possibility" that the pleader is entitled to the relief sought. *Id.* at 678-80; *Mitchell v. Johnson*, No. 07-40996, 2008 WL 3244283, at *2 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 550 U.S. at 570).

And while courts must accept a complaint's allegations as true, this applies only to well-pleaded factual allegations, not to legal conclusions. A pleading that offers mere "labels and conclusions" is insufficient, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-80. Such bare conclusory assertions and legal conclusions are not entitled to the assumption of truth in ruling on a Rule 12(b)(6) motion. *Id.* Once the well-pleaded factual allegations are identified and assumed true, courts must determine whether those allegations "plausibly give rise to an entitlement to relief" and allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678-79.

**C.  The due process claim should be dismissed because it is not justiciable, and even if it were, Plaintiff fails to allege facts necessary to state a plausible due process claim.**

**1.  The due process claim is not justiciable because Plaintiff lacks standing and the claim is not ripe.**

Even though the Parish granted the permit and variance Plaintiff sought, Plaintiff asserts a due process claim based on the U.S. Constitution's requirement that no state shall deprive any person of property without due process of law.[17] Plaintiff incorporates all of its factual allegations and alleges that all the actions described constitute a deprivation of its due process rights guaranteed under the Fourteenth Amendment.[18] Relying on its allegation that the Parish has stated its intention to attempt to revoke its permit, Plaintiff claims that a "declaration that Terrebonne Parish may not take Plaintiff's property without due process is appropriate . . . ."[19] Plaintiff does not, however, request a declaratory judgment on this issue in its prayer for relief. Plaintiff instead asserts that it "has suffered or will suffer damages" from the Parish's actions, including lost income, lost profits, attorneys' fees, the costs to construct the facility, court costs, and other damages to be proven at trial, and it seeks to recover money damages for the alleged violation.[20] But the fact remains that Plaintiff has the permit it sought, and the Parish has not deprived Plaintiff of any property without due process. There is thus no case or controversy as required by Article III, and the claims should be dismissed for lack of standing and ripeness.

Article III of the U.S. Constitution confines federal courts to "adjudicating actual 'cases' and 'controversies.'" *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

---

[17]    Am. Compl. ¶ 64 (R. Doc. 5).
[18]    Am. Compl. ¶ 63, 65 (R. Doc. 5).
[19]    Am. Compl. ¶ 65 (R. Doc. 5).
[20]    Am. Compl. ¶ 66, Prayer (R. Doc. 5).

(2016). The doctrine limits the category of litigants permitted to maintain a lawsuit in federal court and limits the federal courts to a properly judicial role. *Id.* The "irreducible constitutional minimum" of standing contains three elements. *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* As the party invoking federal jurisdiction, the plaintiff has the burden of clearly alleging facts demonstrating each element. *Id.*

To establish injury in fact, the plaintiff must allege that it suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). To be concrete, an injury must "actually exist." *Id.* Threatened injuries may satisfy the injury-in-fact requirement *only* when they are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Allegations of "*possible future injury*" fail to establish standing. *Id.* Courts analyzing whether a threatened injury is certainly impending consider whether the plaintiff's theory of standing relies on speculation and assumptions of a chain of possibilities. *Id.* at 410 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (rejecting a standing theory based on a speculative chain of possibilities)). In addition, courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id.* at 413.

Like standing, ripeness often addresses whether a sufficient injury has occurred. In this way, ripeness and standing "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Lopez*, 617 F.3d at 342 (quoting *Texas*, 497 F.3d at

496); *see also* 13B Charles Alan Wright, et al., Federal Practice and Procedure § 3531.12 (3d ed. 2019) (discussing the connections between standing and ripeness theories).

Ripeness is another component of subject matter jurisdiction that limits a court's power to decide disputes that are not yet justiciable. *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). If a plaintiff's alleged injury is contingent on future events that "may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Id.* at 342 (quoting *Thomas v. Union Carbide Agric. Prods.*, 473 U.S. 568, 580-81 (1985)). Courts should dismiss a case for lack of ripeness when the case is abstract or hypothetical. *Id.* at 341 (quoting *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)). To determine whether claims are ripe, courts "evaluate: (1) the fitness of the issues for judicial resolution and (2) the potential hardship to the parties caused by declining court consideration." *Id.* (citing *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007)). "[A] case is not ripe if further factual development is required." *Choice Inc. of Tex. V. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). Instead, cases are generally ripe where the only remaining questions are purely legal ones. *Id.* But even where an issue presents purely legal questions, the plaintiff still must show some hardship to establish ripeness. *Id.* (quoting *Cent. & S. W. Servs., Inc. v. U.S. EPA*, 220 F.3d 683, 690 (5th Cir. 2000)). Hardship may be found in legal harms like the harmful creation of legal rights or obligations, practical harms on the plaintiff's interest, or the harm of being forced to modify behavior to avoid future consequences. *Id.* (quoting *Texas*, 497 F.3d at 499).

Here, Plaintiff lacks standing and its due process claim is not ripe for the same reasons—it has not suffered any concrete injury and any harm is based on mere speculation. Plaintiff alleges generally that all of the facts alleged constitute a deprivation of its due process rights. But as Plaintiff admits, the Parish approved its application for a permit and variance and issued the

8

permit it requested.[21] Plaintiff does not allege that it has been deprived of any property without due process or that its permit has been improperly revoked. Instead its due process claim rests entirely on its own speculation that the Parish *may* attempt to revoke its permit at some point in the future and that it *may* do so without providing due process. There is no allegation that any revocation is "certainly impending" as required to establish constitutional standing in this case.

Plaintiff claims that the Parish intends to attempt to revoke Plaintiff's permit without just cause, but fails to support that speculative conclusion regarding the Parish's subjective intent with factual allegations demonstrating any actual or imminent injury.[22] For example, Plaintiff alleges that after the Parish council voted to approve the permit application, the Parish president announced his intent to veto the approval.[23] But as Plaintiff admits, the Parish president does not have authority to do so.[24] Plaintiff further alleges that the Parish president stated that he believed the permit process was "procedurally incorrect" and that he would attempt to invalidate Plaintiff's permit.[25] But only the Parish council, not the president, has the authority and discretion to revoke permits under certain circumstances, and Plaintiff has not alleged that any steps have been taken to revoke the permit. TP Ordinances § 11-63. Finally, Plaintiff alleges that the Parish will not advise Plaintiff of its trial strategy for the LEAN lawsuit and that it believes the Parish may fail to oppose certain relief requested by LEAN.[26] Those allegations are also speculative and conclusory. Furthermore, Plaintiff cannot establish that the Parish has any obligation to reveal its privileged trial strategy regarding another lawsuit.

---

[21]     Am. Compl. ¶ 46, 51 (R. Doc. 5).
[22]     Am. Compl. ¶65 (R. Doc. 5).
[23]     Am. Compl. ¶ 47 (R. Doc. 5).
[24]     Am. Compl. ¶ 47 (R. Doc. 5). Plaintiff's permit application was approved by motion, and the Parish president only has veto power over ordinances passed by the council. TP Ordinances § 2-13.
[25]     Am. Compl. ¶ 48 (R. Doc. 5).
[26]     Am. Compl. ¶ 54-55 R. Doc. 5).

Plaintiff alleges nothing more than a possible future injury contingent on a speculative chain of possibilities that may not occur at all. And Plaintiff has not alleged any facts that, even if true, would constitute any real or imminent threat that its permit will be revoked much less that it will be revoked in violation of the Parish ordinances or without properly exercising the considerable discretion afforded the Parish in making decisions regarding revoking permits. *See* TP Ordinances § 11-63 (Where certain circumstances are met, the council in its discretion may suspend or revoke the permit . . . . The revocation or suspension shall be under terms determined by the council in its sole discretion."). Its claim could only possibly be justiciable after further factual development if a series of contingent future events occur. Thus, any claim Plaintiff *may* have in the future is not yet ripe. And importantly, there will be no hardship if the Court declines consideration of the due process claim because Plaintiff has not suffered and may never suffer a due process violation, it has the permit it applied for, and it has no need to modify its behavior to avoid any future consequences. Simply put, there is no case or controversy for this Court to decide. Plaintiff lacks standing, and the claim is not ripe. So this Court lacks subject matter jurisdiction, and the due process claim should therefore be dismissed.

### 2.    Plaintiff fails to allege a due process violation.

Even if Plaintiff has a justiciable due process claim, it should still be dismissed for Plaintiff's failure to sufficiently state the claim. Plaintiff's allegations in connection with its alleged due process violation are so vague that it is unclear whether Plaintiff is asserting a procedural or substantive due process violation. Nevertheless, Plaintiff fails to alleges sufficient facts to support either type of claim, and the claim should be dismissed under Rule 12(b)(6).

"Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 222 (5th Cir. 2012) (quoting *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991)). To state a valid

procedural due process claim, plaintiffs must allege that (1) they were deprived of a protected property interest and (2) they were denied the process due them. *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991); *See Monumental Task Comm., Inc. v. Foxx*, No. 15-6905, 2016 WL 5780194, at *7 (E.D. La. Oct. 4, 2016). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *G & H Dev. v. Benton-Parish Metro. Planning Comm'n*, 641 Fed. App'x 354, 357 (5th Cir. 2016).

"Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them." *Foxx*, 2016 WL 5780194, at *4 (citing *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 -31 (5th Cir. 2011)). Substantive due process considers whether the government has sufficient justification for depriving a person from life, liberty, or property. *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 594 (E.D. La. 2016), *aff'd*, 678 Fed. App'x 250 (5th Cir. 2017). Where there is no denial of life, liberty, or property, substantive due process is not implicated. *Id.*

Plaintiff fails to state a claim for a procedural or substantive due process violation because it has not alleged that it was deprived of a protected property interest. Plaintiff applied for a permit, and the requested permit was approved and issued to Plaintiff.[27] Plaintiff has not alleged that the permit was revoked, let alone that it was revoked arbitrarily or without any opportunity for a hearing. Plaintiff fails to allege sufficient facts to state a plausible claim for a due process violation, and that claim should be dismissed.

---

[27]     Am. Compl. ¶¶ 37, 46, 51 (R. Doc. 5).

**D.  The takings claim should be dismissed because it is not justiciable, and even if it were, Plaintiff fails to allege facts necessary to state a plausible takings claim.**

      **1.  The takings claim is not justiciable because Plaintiff lacks standing and the claim is not ripe.**

Like the due process claim, the Court also lacks jurisdiction to hear Plaintiff's claim for an unconstitutional taking because the Plaintiff lacks standing and the purported claim is not ripe. Plaintiff quotes the U.S. Constitution's Fifth Amendment's directive that "private property [shall not] be taken for public use, without just compensation."[28] Plaintiff then asserts that it seeks a declaration that any action by the Parish to revoke its permit after such permit was properly approved constitutes an illegal taking of property for which Plaintiff had a vested property interest.[29] As with the due process claim, Plaintiff also asserts that it seeks a declaration but does not actually request such a declaration in its prayer for relief.[30] Instead it claims that the Parish's conduct "has or will cause" Plaintiff damages, including lost income, lost profits, attorneys' fees, the costs to construct the facility, court costs, and other damages to be proven at trial, and it seeks to recover money damages for the alleged violation.[31]

A takings claims is ripe only when: (1) the relevant governmental unit has reached a final decision as to how a regulation will be applied to a landowner and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides. *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292-93 (5th Cir. 2006). A Takings Clause violation does not occur until a plaintiff is denied just compensation. *Id.* at 294. So under the second prong, a plaintiff in Louisiana must first seek compensation in state court through an inverse condemnation proceeding under La. Rev. Stat. § 13:5111, *et seq. Brown v.*

---

[28]     Am. Compl. ¶ 68 (R. Doc. 5).
[29]     Am. Compl. ¶ 69 (R. Doc. 5).
[30]     Am. Compl. Prayer (R. Doc. 5).
[31]     Am. Compl. ¶ 69, Prayer (R. Doc. 5).

*Bd. of Comm'rs Fifth La. Levee Dist.*, No. 13-289, 2017 WL 3911001, at \*4-\*5 (W.D. La. Aug. 1, 2017), *report and recommendation adopted*, 2017 WL 3908916 (W.D. La. Sept. 6, 2017), *aff'd*, 726 Fed. App'x 227 (5th Cir. 2018) (dismissing takings claim as unripe because the plaintiff had not sought compensation in the state courts through an inverse condemnation or other proceeding).

Here, Plaintiff has not suffered a deprivation of property. To the contrary, the Parish's final decision was to approve Plaintiff's permit application and issue the requested permit.[32] Further, Plaintiff has not sought or been denied compensation for any alleged taking through Louisiana state court proceedings. And as demonstrated above, Plaintiff does not allege facts sufficient to show that any future injury is certainly impending rather than merely based on speculation and assumptions about events that may never occur. Plaintiff's takings claim should therefore be dismissed for lack of ripeness and standing.

### 2.      Plaintiff fails to allege that any property has been taken.

The Takings Clause of the Fifth Amendment, made applicable to the states through Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). It "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *Id.* (quoting *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 314 (1987)). It is "designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Id.* (quoting *First English Evangelical*, 482 U.S. at 315).

---

[32]       Am. Compl. ¶¶ 46, 51 (R. Doc. 5).

As discussed in Part II(D)(1), Plaintiff has not alleged that any property has been taken from it or that it has sought and been denied just compensation for any taking. Thus, even if entertained, Plaintiff's takings claim should be dismissed for failure to state a plausible claim.

### E. The equal protection claim should be dismissed because Plaintiff fails to allege facts necessary to state a plausible claim.

Plaintiff alleges that the Parish has denied it the equal protection of the laws afforded to other similarly situated entities.[33] Essentially, Plaintiff claims that the Parish treated it differently than other similarly situated permit applicants by demanding that its representatives appear for separate public meetings, requiring the Louisiana Attorney General's opinion before issuing the permit and variance, by refusing to disclose its privileged and protected trial strategy in a separate lawsuit, and by taking steps to revoke the permit.[34] But these allegations fail to state a plausible claim for an equal protection violation, and the claim should be dismissed.

Because Plaintiff does not allege to be a member of a protected class, it appears to be asserting a "class of one" equal protection claim. The Fourteenth Amendment's Equal Protection Clause requires that all similarly situated persons be treated alike. *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). It does not require that all persons be treated identically, but it does require that distinctions have some relevance to the purpose for which the classification is made. *Id.* at 538-39. The U.S. Supreme Court has recognized cognizable equal protection claims by a "class of one" where a plaintiff does not allege membership in a suspect class or group but instead alleges that it, individually, has been intentionally treated differently. *Id.* at 539 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To state a traditional class-of-one equal protection claim, the plaintiff must allege that: (1) it was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment. *Id.*

---

[33]     Am. Compl. ¶ 61 (R. Doc. 5).
[34]     Am. Compl. ¶ 60-61 (R. Doc. 5).

Plaintiff's class-of-one equal protection claim should be dismissed because such claims are not available for discretionary decisions like the Parish's decision here. Further, even if it were available, Plaintiff asserts a "selective enforcement" class-of-one claim that requires improper motive, which Plaintiff fails to allege. And even if the traditional class-of-one test applies, Plaintiff still fails to allege sufficient facts to state a plausible claim.

### 1.    The class-of-one equal protection claim is unavailable because the Parish's decision was discretionary.

The U.S. Fifth Circuit Court of Appeals has repeatedly limited the availability of class-of-one equal protection claims where the governmental action involved "discretionary decisionmaking based on a vast array of subjective, individualized assessments." *See, e.g.*, *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008)); *Wood*, 836 F.3d at 541 (same). An exception was established in *Engquist v. Oregon Department of Agriculture*, where the U.S. Supreme Court held that the class-of-one theory of equal protection did not apply in the public employment context because treating individuals differently is an accepted consequence where the government has discretionary decisionmaking power involving subjective and individualized assessments. 553 U.S. 591, 607 (2008). The Fifth Circuit has adopted the reasoning from *Engquist* and rejected class-of-one equal protection claims in other contexts where the governmental action was discretionary. *See Rountree v. Dyson*, 892 F.3d 681, 684-85 (5th Cir. 2018) (rejecting claim based on local government's discretionary decision whether to revoke a tow driver's non-consent towing permit); *Integrity Collision Ctr.*, 837 F.3d at 586-87 (rejecting claim based on decision whether to include a company on a non-consent tow list); *Wood*, 836 F.3d at 541 (rejecting claim based on state's strategic decisions to retest execution drugs in different cases). In doing so, the court has noted that it would be incompatible with the discretion

inherent in the challenged action to allow such equal protection claims. *Rountree*, 892 F.3d at 684; *Integrity Collision Ctr.*, 837 F.3d at 586; *Wood*, 836 F.3d at 541.

In *Integrity Collision Center v. City of Fulshear*, for instance, the Fifth Circuit dismissed a class-of-one equal protection claim based on a city's decision not to include the plaintiff on its list of private companies it calls to tow vehicles that are to be impounded. 837 F.3d 581, 584, 588 (5th Cir. 2016). The court noted that the decision did not yield a "clear standard" by which an equal protection claim could be evaluated and that it instead involved subjective, individualized assessments. *Id.* at 587. In addition, the court recognized that it would be impractical for the court to involve itself in reviewing countless discretionary decisions for equal protection violations. *Id.* at 588. The Fifth Circuit applied similar reasoning again last year in *Rountree v. Dyson* when it affirmed the dismissal of a claim based on a city's decision to revoke a company's towing permit. 892 F.3d 681, 683-84 (5th Cir. 2018).

The Fifth Circuit's reasoning regarding class-of-one equal protection claims based on discretionary decisions applies equally here, and Plaintiff's claim should be dismissed. Importantly, because Plaintiff sought to construct its facility within one mile of another structure, which is prohibited under the TP Ordinances, its permit application included a request for a variance from the TP Ordinances. The ordinances provide that a "variance shall be issued *solely at the discretion of the council*" and only after:

(1) A showing of good and sufficient cause;
(2) A determination that failure to grant the variance would result in exceptional hardship to the applicant;
(3) A  determination that the granting of a variance would

TP Ordinances § 11-64 (emphasis added).

Thus, the Parish's decision whether to grant the variance (and thus the permit application) was discretionary and subject to subjective and individualized assessments regarding the particular

application, including whether it demonstrated good cause and whether failing to grant the variance would result in exceptional hardship to the particular applicant. It would undercut the Parish's inherent discretion in granting variances and be impractical for this Court to now review the Parish's discretionary decisions in the context of Plaintiff's unsupported equal protection violations. Plaintiff's class-of-one equal protection claim should therefore be dismissed.

> **2.      Plaintiff fails to allege any improper motive as required for a selective enforcement class-of-one equal protection claim.**

Plaintiff also fails to allege any improper motive by the Parish as required for a "selective enforcement" equal protection claim. The Fifth Circuit recognizes certain class-of-one equal protection claims that sound in "selective enforcement" where the plaintiff complains about the extraordinary process it faced in connection with permitting or zoning actions. *See Beeler v. Rounsavall*, 328 F.3d 813, 816-17 (5th Cir. 2000) (equal protection claim alleging extraordinary process plaintiff faced in connection with obtaining alcohol sale permit was a selective enforcement claim); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276-77 (5th Cir. 2000) (plaintiff's alleged equal protection violation based on the extraordinary process he faced in connection with attempt to obtain building permit was a selective enforcement claim). To successfully allege a selective enforcement claim, a plaintiff must allege that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. *Beeler*, 328 F.3d at 817-18 (suggesting without deciding that personal vindictiveness by itself is likely insufficient as an improper motive without some other class- or group-based discrimination); *Bryan*, 213 F.3d at 277.

For example, the plaintiff in *Bryan v. City of Madison* asserted equal protection violations based on the extraordinary process he faced in applying for a building permit, including an unscheduled meeting and the hiring of an outside engineering firm to review his plans. 213 F.3d

267, 271 n.3, 276 (5th Cir. 2000). The Fifth Circuit found that this was a selective enforcement claim, and it dismissed the claim because the plaintiff failed to allege any improper motive by defendants. *Id.* at 277. Similarly, in *Beeler v. Rounsavall*, the court characterized the plaintiff's equal protection claim as a selective enforcement claim where the plaintiff ultimately received the permit he sought but complained about the extraordinary process he faced. 328 F.3d 813, 815-17 (5th Cir. 2003). The court again dismissed the claim because the plaintiff failed to allege any improper motive, or any motive at all, for the defendants' actions. *Id.* at 817.

Plaintiff's claim here is properly characterized as a selective enforcement equal protection claim. Like the plaintiff in *Beeler*, Plaintiff ultimately received the permit it sought but complains about the extraordinary it process it allegedly faced, including an alleged demand for separate public meetings and requiring a Louisiana Attorney General opinion before issuing the permit.[35] And as a selective enforcement claim, Plaintiff must allege that the Parish's actions were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. It fails to make any such allegations and fails to sufficiently allege any motive driving the Parish's actions. Even Plaintiff's allegation that a Parish representative distributed a flyer with false and defamatory statements says nothing about any alleged motive. Plaintiff's failure to allege any improper motive based on race, religion, or the desire to prevent the exercise of a constitutional right is fatal to its purported equal protection claim, and the claim should be dismissed.

### 3. Even under the traditional test, Plaintiff fails to allege sufficient facts to state a plausible class-of-one equal protection claim.

Finally, even if Plaintiff's claim is considered a traditional class-of-one equal protection claim, it should still be dismissed for failure to state a claim. As explained, to state a class-of-one

---

[35]   Am. Compl. ¶ 60 (R. Doc. 5).

equal protection claim, the plaintiff must allege: (1) it was intentionally treated differently from other similarly situated and (2) there was no rational basis for the difference in treatment. *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). There is no precise formula to determine whether an individual is similarly situated to the class-of-one plaintiff, and courts must consider a variety of factors that an objectively reasonable decisionmaker would have found relevant in making the challenged decision. *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 233-34 (5th Cir. 2012) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007)).

The Plaintiff here fails to allege sufficient facts to support either prong of the test. To identify someone similarly situated in this case, Plaintiff would at need to allege that the other applicant sought a hazardous waste permit and a variance under TP Ordinances § 11-64 and that the other applicant's circumstances were similar with respect to the discretionary findings required for the Parish to grant a permit and variance, including that the applicant would suffer extreme hardship if the variance were denied. Plaintiff does not identify any applicant that is similarly situated in the relevant ways that an objectively reasonable decisionmaker would consider in making the challenged decision. Similarly, Plaintiff has not sufficiently alleged that there was no rational basis for the alleged difference in treatment. Granting a variance to allow hazardous waste processing within one mile of other structures involves individualized assessments, and Plaintiff alleges that several citizens were opposed to the facility for various reasons.[36] Given the nature of the request, Plaintiff has not and cannot allege that there was no rational basis for any difference in treatment by the Parish. Plaintiff fails to allege sufficient facts to support its equal protection claim, and the claim should be dismissed.

---

[36]     Am. Compl. ¶ 31 (R. Doc. 5).

**F. The declaratory judgment and injunction claims should be dismissed because the Court lacks jurisdiction or, alternatively, should decline jurisdiction.**

Plaintiff asserts alternative requests for declaratory judgments and an injunction. It seeks a judgment declaring that it is not required to obtain a hazardous waste permit under TP Ordinances § 11-51 *et seq*, despite already having such a permit.[37] It further seeks a judgment declaring that to the extent that the Parish ordinances regulate NORM, the Parish is preempted from regulating NORM by Louisiana state law.[38] Plaintiff also seeks a permanent injunction prohibiting the Parish from requiring it to obtain a Parish hazardous waste permit to operate its facility.[39] The Court lacks jurisdiction to hear these claims, and even if it had jurisdiction, it should decline to do so.

### 1. The declaratory judgment claims should be dismissed.

The Supreme Court has held that "[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). "The declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy and an adjudication would serve a useful purpose." *Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971). The Fifth Circuit has established a three-step inquiry to determine whether to dismiss declaratory judgment claims: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383,

---

[37]     Am. Compl. ¶¶ 72, 83 (R. Doc. 5).
[38]     Am. Compl. ¶¶ 78, Prayer (R. Doc. 5).
[39]     Am. Compl. ¶¶ 71, 84 (R. Doc. 5).

387 (5th Cir. 2003). Plaintiff's declaratory judgment claims fail the first and third steps of the inquiry and should be dismissed.

The first step requires a court to determine if it has jurisdiction to hear the claim. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). And courts' jurisdiction under the Declaratory Judgment Act is no broader than Article III's "case or controversy" requirement. *Waller v. Hanlon*, 922 F.3d 590, 603 (5th Cir. 2019). Like other actions, a declaratory judgment action must be ripe to be justiciable, and the plaintiff must have standing. *Id.* at 603; *TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325, 332 (5th Cir. 2017) (quoting *Orix*, 212 F.3d at 896 (5th Cir. 2000)). And as with other claims, the doctrine of ripeness overlaps with standing's injury component.

To sufficiently allege standing when seeking declaratory relief, a plaintiff must allege facts from which it appears there is a "substantial likelihood that he will suffer injury in the future." *Waller*, 922 F.3d at 603 (citing *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). Similarly, the "ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *TOTAL Gas & Power*, 859 F.3d at 333. Declaratory judgment actions are subject to the ripeness requirement even though they are often brought before injury has occurred, and an actual case or controversy for a declaratory judgment action generally exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.*

Here, Plaintiff lacks standing for its claims for declaratory relief, and the claims are not ripe because Plaintiff is not currently suffering any injury and it fails to allege facts establishing that any possible future injury is sufficiently likely to warrant court intervention. *See Orix*, 212

F.3d at 897. Plaintiff seeks declarations that it is not required to obtain a hazardous waste permit or that the Parish is preempted from regulating NORM by Louisiana state law.[40] But as Plaintiff alleges, the Parish issued the permit and variance Plaintiff sought.[41] Plaintiff does *not* allege that the Parish has revoked or suspended that permit. Nothing is preventing Plaintiff from proceeding with constructing its facility. And as discussed above in Parts II(C)(1) and II(D)(1), Plaintiff does not allege sufficient facts to show a substantial likelihood that it will suffer injury in the future. There is simply no substantial controversy of sufficient immediacy between the parties, and judicial intervention would be inappropriate. Plaintiff's claims are thus not justiciable.

But even if the claims were justiciable, this Court should decline jurisdiction and exercise its discretion to dismiss the action under the third step of the analysis. Courts in this circuit use seven factors, known as the *Trejo* factors, in deciding whether to dismiss a declaratory action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit is pending.

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 (5th Cir. 2003) (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)).

---

[40]   Am. Compl. ¶¶ 71, 78-83, Prayer (R. Doc. 5).
[41]   Am. Compl. ¶¶ 46, 51 (R. Doc. 5).

These factors generally address concerns about the proper allocation of decisionmaking between state and federal courts, fairness, and efficiency. *Id.* at 390-91.

In this case, most of the *Trejo* factors favor dismissal of the declaratory judgment claims. As for the first factor, a federal court may decline to decide a declaratory judgment claim when another suit is pending in state court presenting the same state law issues between the same parties. *Id.* at 392 (noting that courts should consider whether the action is better suited for decision by the state court). Before filing this lawsuit, Plaintiff filed a lawsuit related to its permit application process in the Louisiana district court for Terrebonne Parish asserting the same declaratory and injunctive claims there that it asserts here—(i) declarations that it is not required to obtain a permit under the TP Ordinances and that the Parish is preempted by state law from regulating NORM and (ii) an injunction prohibiting the Parish from requiring Plaintiff to obtain a permit to operate its facility.[42] That case is still pending in Terrebonne Parish,[43] and it presents the same issues between the same parties as the declaratory judgment and injunction claims here. Those issues (indeed, the only issues that would remain after dismissal of other claims as requested) relate entirely to state law and the interplay between state statutes and local ordinances. The declaratory judgment action does not implicate any application of federal law. *See id.* at 396 (noting that the presence of federal issues is an important consideration in deciding whether a federal court should decide the claim). Entertaining Plaintiff's claims in this suit would result in duplicative litigation and risk inconsistent decisions. These same concerns impact the judicial economy analysis under the sixth factor. Proceeding with parallel declaratory judgment claims at the same time in both and state and federal court is a waste of judicial

---

[42]   MARS Cleaning State Court Pet. ¶¶ 38-52, attached as Exhibit 1.

[43]   Plaintiff sought dismissal without prejudice of its state court lawsuit. But because the Parish had already appeared, it objected to dismissal *without* prejudice under La. Code Civ. Proc. art. 1671. The court refused to dismiss the suit without prejudice and noted that the case would not be dismissed with prejudice unless Plaintiff requested such further relief.

resources and of the parties' time and money. These claims are better decided by the state court, and dismissing these claims would promote judicial economy.

The third and fourth *Trejo* factors also weigh in favor of declining jurisdiction. Plaintiff previously asserted its declaratory and injunction claims in a state court lawsuit. It later filed those same claims in this Court along with entirely invalid constitutional claims based primarily on events that have not yet happened and may not ever happen. This appears to be an attempt at forum shopping to avoid having the state court in Terrebonne Parish interpret Terrebonne Parish ordinances. Allowing the Parish to forum shop to gain an advantage and seek a ruling on state law from federal court rather than the state court where the claims were originally filed should not be permitted. The fifth *Trejo* factor is also implicated here because the location of the parties and the activities giving rise to Plaintiff's claims is in Terrebonne Parish, over 50 miles from this Court. While this is not prohibitively inconvenient, it is certainly less convenient than having the claims decided by the state court in Terrebonne Parish where they are already pending. Thus, the *Trejo* factors weigh in favor of declining jurisdiction, and even if this Court had jurisdiction over the declaratory judgment claims, it should decline to hear the claims.

### 2.     The claim for injunctive relief should be dismissed.

Like the declaratory relief claims, to sufficiently allege standing when seeking injunctive relief, a plaintiff must allege facts from which it appears there is a "substantial likelihood that he will suffer injury in the future." *Waller*, 922 F.3d at 603 (citing *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)); *see also Taylor v. Denka Performance Elastomer, LLC*, 332 F. Supp. 3d 1039, 1050 (E.D. La. 2018) (standing for injunctive relief requires allegations that plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as a result of challenged conduct). Plaintiff lacks standing for injunctive relief for the same reasons it lacks standing for its declaratory judgment claims. And even if Plaintiff had standing, the claim for an injunction

should still be dismissed because Plaintiff's other claims (and the only claims purporting to present federal questions) are subject to dismissal and there is no good reason for retaining only a state law injunction claim. *See Drake v. Costume Armour, Inc.*, 736 Fed. App'x 505, 506 (5th Cir. 2018) (noting that the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed") (quoting *Parker v. Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)); *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise [supplemental] jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial . . . .").

## III.    Conclusion

Plaintiff's lawsuit involves alleged future injuries that have not and may never occur and claims addressing state law that are already pending in a state court lawsuit. Thus, for the reasons discussed above, Terrebonne Parish Consolidated Government requests that M.A.R.S. Cleaning Services, LLC's claims against it be dismissed.

Respectfully submitted,

/s/ *Jane A. Jackson*_____
Loulan J. Pitre, Jr., T.A. (#17749)
Jane A. Jackson (#33197)
**KELLY HART PITRE**
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Fax: (504) 522-1813
loulan.pitre@kellyhart.com
jane.jackson@kellyhart.com

*Attorneys for Defendant Terrebonne Parish Consolidated Government*