1019-20504                                                                                      #1438488

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **M.A.R.S. CLEANING SERVICES, LLC** | **CIVIL ACTION NO.: 2:19-cv-02354** |
| **v.** | **DISTRICT JUDGE:**<br>**GREG G. GUIDRY** |
| **TERREBONNE PARISH**<br>**CONSOLIDATED GOVERNMENT** | **MAGISTRATE JUDGE:**<br>**JOSEPH C. WILKINSON, JR.** |

<u>**M.A.R.S. CLEANING SERVICES, LLC'S OPPOSITION TO TERREBONNE PARISH**
**CONSOLIDATED GOVERNMENT'S MOTION TO DISMISS**</u>

Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power. *See Marchant v. Pennsylvania R.R.*, 153 U.S. 380, 386 (1894). M.A.R.S. Cleaning Services, LLC ("<u>MARS Cleaning</u>"), has pleaded facts demonstrating that the laws of Terrebonne Parish have been and are presently being applied to it differently to its detriment, and that it is being subjected to the arbitrary exercise of power by local government officials with undisclosed conflicts of interest. As is its right, MARS Cleaning has sought the protections afforded by the federal judiciary under the 14th Amendment. Terrebonne Parish Consolidated Government's (the "Parish") Motion to Dismiss has been brought at the earliest possible opportunity without discovery and, as explained below, fails to establish grounds for the relief it seeks at this premature juncture.

**FACTUAL BACKGROUND**

M.A.R.S. Cleaning is a subsidiary of Modern American Recycling Service, Inc. ("<u>MARS</u>"). MARS operates a facility in Terrebonne Parish ("<u>MARS Recycling Facility</u>"), where it decommissions and scraps various marine assets, including offshore platforms and old vessels that are generally delivered by materials barges. MARS offloads the assets from the materials barges, breaks down these assets into smaller components using heavy equipment, then sells the

1

scrap metal to steel mills. Some of the marine assets, however, contain naturally occurring radioactive material ("NORM"), which is a natural byproduct of offshore production. The MARS Recycling Facility is not permitted to decontaminate items containing NORM, so any assets destined for the MARS Recycling Facility that contain NORM must be marked and, once offloaded from the barges, they are trucked to other facilities in Terrebonne Parish that can decontaminate the assets.[1]

To consolidate the scrapping process and eliminate the additional step of having assets containing NORM being trucked to other facilities for decontamination, MARS created MARS Cleaning to operate a NORM decontamination facility adjacent to the MARS Recycling Facility (the "MARS Cleaning Facility"). In pursuit of that objective, MARS Cleaning sought to obtain the various Louisiana state permits and licenses required to operate such a facility. The MARS Recycling Facility and the location for the MARS Cleaning Facility are in a heavy industrial area in Gibson, Louisiana, historically suited for this type of work. There are no residences, schools, or churches within a one-mile radius of the proposed site for the MARS Cleaning Facility. The only other structures in the area are heavy industrial structures.[2]

### 1. MARS Cleaning's 2017 Application

After a thorough application process, the Louisiana Department of Environmental Quality ("LDEQ"), which regulates NORM statewide, issued MARS Cleaning a Radioactive Material License on May 11, 2017, concerning the proposed MARS Cleaning Facility. In August of 2017, MARS Cleaning submitted a formal application to Terrebonne Parish seeking a permit to operate the MARS Cleaning Facility. With its application, MARS Cleaning also sought a variance from

---

[1] Rec. Doc. 5, ¶¶ 6-11. (all references to the "Complaint" are to MARS Cleaning's Amended and Superseding Complaint)
[2] *Id*. ¶¶ 12-14.

the requirement that a "hazardous waste facility" could not be located within a one-mile radius of any other structure (commercial or residential). Although MARS Cleaning has argued that the Terrebonne Parish Ordinances regarding hazardous waste facilities are preempted by state law and should not apply to MARS Cleaning's proposed facility, the Terrebonne Parish government believed otherwise, so MARS Cleaning prepared and submitted all of the application materials to Terrebonne Parish to be granted a permit pursuant to the Parish Ordinances Section 11-51 *et seq.,* to operate a hazardous waste facility within the Parish.[3] After attending various public meetings before the Parish Council and even an informal town hall meetings outside the Council chamber at the behest of as certain councilmembers, the application came before the Council for a vote on October 25, 2017, which was denied on a vote of 5-4.[4]

### 2. MARS Cleaning's 2018 Application

MARS submitted a second application for a hazardous waste permit in 2018. MARS Cleaning made arrangements to explain in more detail its business model and the safety precautions relating to NORM in the intervening period between the October 25, 2017, unfavorable vote and the 2018 re-submission.[5]

On November 28, 2018, the Parish Council held a public hearing to vote on MARS Cleaning's permit application. Public comment and debate was heard on the application. MARS Cleaning made arrangements for the LDEQ to have two representatives in attendance to speak to the Council and public, answering specific questions about the LDEQ licensing process and its oversight over licensees. The LDEQ representatives also explained the science behind NORM to assuage concerns that were either based upon a lack of understanding or, as set forth in MARS

---

[3] *Id.* ¶¶15-16.
[4] *Id.* ¶ 36.
[5] *Id.* ¶¶ 37-39.

Cleaning's instant Complaint, deliberately stoked by members of Parish government.[6] Several residents from the Parish spoke either for or against MARS Cleaning's application, some of whom spoke previously in 2017. The Parish Council voted 5-4 to approve the application and grant the permit and variance.[7]

### 3. The Parish's Threats and Actions to Treat MARS Cleaning Differently

Within minutes after the vote, however, Parish President Gordon Dove announced that he intended "to veto" MARS Cleaning's permit and variance, despite the fact that the Parish President does not have authority to veto such a motion. The Parish President also began giving interviews with the media that he believed that the permit process was not valid because it was "procedurally incorrect," and that he would take action to invalidate MARS Cleaning's permit and variance. Such unfounded and legally incorrect remarks have damaged MARS Cleaning's ability to engage in its lawful trade, and have encouraged litigants to take legal action against MARS Cleaning – legal action which is presently pending.[8] Upon information and belief, and as alleged in the instant Complaint, a high ranking member of Parish government who actively has sought to overturn the vote and harm MARS Cleaning's business has a close family member who owns and operates a local scrap business that is in direct competition with MARS Cleaning's parent company, MARS.[9] Not once did this influential person disclose this or otherwise recuse himself from either the public debate or media commentary. Rather, the high ranking public official zealously spoke against the application, and used his government position and the Council chamber as a stage for such. Then

---

[6] *Id.* ¶ 42.
[7] *Id.* ¶¶ 41-44.
[8] *Id.* ¶¶ 47-54.
[9] *Id.* ¶ 49.

after a favorable vote he sought to overturn the vote and publicize that the Parish's established process for approving permits and variances was invalid.[10]

Germane to this lawsuit, after the Parish Council approved the application, the Parish began treating MARS Cleaning differently. First, the Parish refused to issue the permit and variance for some time. Then the Parish sought to deny MARS Cleaning's permit and variance on the grounds that the Parish first needed to obtain an opinion from the Louisiana Attorney General concerning the propriety of the November 28, 2018, vote. This action was another step in seeking to deny MARS Cleaning equal protection and due process under the law because other permits and variances issued under the same Parish Ordinances were issued without delay and obfuscation from local Parish officials.[11] In support of this allegation, and as will be explored further in discovery, the Parish sent MARS Cleaning a certified letter after the vote "to formally put" MARS Cleaning on notice "that any action taken by and expenses incurred by [MARS Cleaning] pursuant to the [p]ermit and other potential claims of damages in connection therewith, are taken at their own risk."[12] It is doubtful that there ever was a citizen previously granted a permit from this Parish then told to proceed at its "own risk," all the while the government stokes some public opposition to the permit to encourage litigation against the permit holder.

As pleaded in the Complaint, approximately two weeks after MARS Cleaning's permit was issued on December 7, 2018, and shortly after the Parish President's public statements regarding the alleged invalidity of the process used to advertise and vote on MARS Cleaning's permit, the Parish Council voted to approve a different barge cleaning facility's request for a hazardous waste permit and variance under substantially the same process as was adhered to at the Parish Council

---

[10] *Id.* ¶¶45-50.
[11] *Id.*
[12] *See* correspondence from counsel for Terrebonne Parish, attached hereto as Exhibit "A."

vote on MARS Cleaning's application on November 28, 2018. No such double standard was applied to that applicant.[13] As pleaded, this is facial evidence that the permitting and variance laws of Terrebonne Parish are not being applied evenhandedly so that individuals are not subjected to the arbitrary exercise of government.

4.   **The Lawsuit to Invalidate MARS Cleaning's Permit Under the Open Meetings Law**

On January 28, 2019, Barbara Gibson, an alleged resident of Terrebonne Parish, and the Louisiana Environmental Action Network ("LEAN"), a purported non-profit environmental organization, filed suit against Terrebonne Parish Consolidated Government seeking to have MARS Cleaning's permit revoked, in a matter entitled *"Louisiana Environmental Action Network and Barbara Gibson v. Terrebonne Parish Council,"* No. 184975 (32nd Judicial District Court, Terrebonne Parish, Louisiana) (the "LEAN Lawsuit"). MARS Cleaning was not made a party to that lawsuit or even made aware of the lawsuit for some time after it had been filed and served. As specifically pleaded in MARS Cleaning's suit, upon information and belief, certain high-ranking members who are in a position to direct the legal position of Terrebonne Parish Consolidated Government are in agreement with the position of the plaintiffs in the LEAN Lawsuit and have clandestinely and tacitly either worked with the plaintiffs in that lawsuit or have otherwise taken the position that they will fail to oppose the relief requested by the plaintiffs in the LEAN Lawsuit to MARS Cleaning's detriment.[14]

To wit, other than filing an answer, since January of this year the Parish has for whatever reason decided not to do anything meaningful to defend the LEAN Lawsuit. Indeed, MARS Cleaning was not made aware of the LEAN lawsuit for over two weeks after service on the Parish. The LEAN Lawsuit was filed nearly eight months ago and the Parish has not propounded discovery

---

[13] Rec. Doc. 5, ¶ 51.
[14] *Id*. ¶ 54.

or taken any meaningful action to dispute the LEAN Lawsuit's allegations.[15] Indeed, the Parish's discovery responses to the LEAN plaintiffs' discovery requests are written in a style that begs the question as to what end are the responses tailored – to support the LEAN plaintiffs' claims or the Parish's longstanding permit and variance procedures?

MARS Cleaning mentions all of this because the Parish discussed the LEAN Lawsuit in its Motion, remarking that while MARS Cleaning "complains that the Parish has not disclosed its plans for responding to the LEAN lawsuit, [MARS Cleaning] has not alleged any basis for the Parish to waive privilege and reveal its privileged trial strategy from another lawsuit."[16] This is pure bunk. Apparently the Parish's "privileged trial strategy" is to do nothing, which is precisely what it has done for the past eight months. Indeed, just last week the plaintiffs in LEAN Lawsuit filed for summary judgment on all disputed issues. The Parish has not propounded discovery or secured a single deposition (including the plaintiff herself), so it is has been left to MARS Cleaning, as Intervenor, to defend alone the Parish's own procedure for approving permits and variances – a duty that the Parish has abrogated.[17]

Moreover, the Parish's statement is wrong that MARS Cleaning "has not alleged any basis" to discuss a "trial strategy" that appears in any event to be nonexistent. The basis it stated rather bluntly: "certain high-ranking members who are in a position to direct the legal position of Terrebonne Parish Consolidated Government are in agreement with the position of the plaintiffs in the LEAN Lawsuit and may fail to oppose certain relief requested by the plaintiffs in the LEAN Lawsuit to MARS Cleaning's detriment."[18] Day by day such appears to rather accurately capture the Parish's trial strategy. MARS Cleaning has sought the disinterested protection of this federal

---

[15] *Id*. ¶¶ 47-50.
[16] Rec. Doc. 11-1, p. 4.
[17] Rec. Doc. 5, ¶¶ 53-55.
[18] *Id*. ¶ 54.

forum to uncover in this lawsuit why the Parish treats it differently from a permit and variance holder just two weeks later (as well as all permit and variance applicants that can be found in the Parish's public minutes from Council Meetings), why the Parish does not defend its voting procedures as to MARS Cleaning abrogating its duty to do so, why the Parish does not timely advise MARS Cleaning of a lawsuit directly affecting the permit and variance, why the Parish does not defend that same lawsuit, and whether the Parish has taken any action to work with the plaintiffs in the LEAN Lawsuit to work against MARS Cleaning.

## **LAW AND ARGUMENT**

The Parish's Motion to Dismiss is under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, both of which employ different standards.

### 1. **Standard for Rule 12(b)(1) Motion**

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should not be granted at this preliminary stage because the inquiry as to whether this Court has subject matter jurisdiction over MARS Cleaning's constitutional claims is the same as whether MARS Cleaning has succeeded in proving a federal cause of action. *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981). A motion to dismiss for lack of subject matter jurisdiction is decided on different grounds depending on when the Motion is brought—when a Motion such as this is brought on the face of the complaint alone after no opportunity for discovery has been had, the court decides the motion on the same standard as a motion to dismiss under Rule 12(b)(6) and treats the well-pleaded allegations in the complaint as true. *Sream Superior Discount*, No. 17-8177, 2019 WL 1003053 (E.D. La. Mar. 1, 2019) (Morgan, J.) (citing *Williamson*, 645 F.2d at 404, 412-13; *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

While the Parish is correct that a court may resolve disputed facts when determining a Rule 12(b)(1) motion, a district court "must give the plaintiff an opportunity for discovery and for a hearing" before the court should exercise its fact-finding abilities. *Williamson*, 645 F.2d at 414. Indeed, the Fifth Circuit has explained that some courts have refused to grant 12(b)(1) motions where "absent an incurable defect in the complaint-the plaintiff has had no opportunity" for discovery on matters relevant to jurisdiction. *Id.* However, in an instance such as this where the Parish has simply filed a motion to dismiss, but has not filed any affidavits, testimony, or other evidentiary material relevant to the relief sought under Rule 12(b)(1), the attack is considered "facial" and the court merely looks at the sufficiency of the allegations in the complaint. *Paterson*, 644 F.2d at 523.

More importantly, the Fifth Circuit has recognized that where the basis for federal jurisdiction is an element of the plaintiff's cause of action, the court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson*, 645 F.2d at 415. This provides greater protection to a plaintiff because the defendant is forced to proceed under Rule 12(b)(6) or summary judgment, which provides greater procedural protections to a plaintiff. *See id.* The only exception is where the plaintiff's claim has "no plausible foundation" or is "clearly foreclosed by a prior Supreme Court decision." *Id.* at 416 (quoting *Bell v. Health Mor Inc.*, 529 F.2d 342 (5th Cir. 1977)).

Here, neither exists. The issues raised by the Parish that are purportedly related to "subject matter jurisdiction" are really questions of whether MARS Cleaning can prove that it has claims for an unconstitutional taking, due process, and equal protection. Because the jurisdictional question is subsumed in the merits of this case, the Court must decide this case not under the Rule 12(b)(1) standards, but under a Rule 12(b)(6) standard.  *See Williamson*, 645 F.2d at 412. In any

event, while the Parish alleges certain "facts" in the body of its pleading to support its assertion that there is no jurisdiction, those facts are not established via affidavit or testimony, and MARS Cleaning has not had an opportunity to obtain discovery on these jurisdictional issues. Thus, for these two reasons, jurisprudence requires this Court to treat the allegations made in MARS Cleaning's Complaint as true.

### 2. <u>Standard for 12(b)(6) Motion</u>

As explained above, this Honorable Court should determine the entirety of this Motion under the Rule 12(b)(6) standard, under which this Honorable Court must accept the well-pleaded facts in the complaint in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). If the facts pleaded in the complaint state a claim that is "plausible on its face," the motion to dismiss should be denied. *Id.* A claim is plausible on its face when the facts pleaded allow the court to "draw reasonable inference[s] that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff does not have to plead every detail in their complaint, the complaint need only "contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *E.E.O.C. v. Jamal & Kamal, Inc.*, No. 05-2667, 2006 WL 285143, *2 (E.D. La. Feb. 7, 2006) (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

### 3. <u>MARS Cleaning has Established Standing for its Declaratory Judgment Action for Due Process Violations</u>

The inquiry is whether MARS Cleaning has pleaded sufficient standing to assert a declaratory judgment action for due process violations. It has done so. The Parish leadership has previously undisclosed financial and familial conflicts of interest, has encouraged litigation against MARS Cleaning through media pronouncements, has advised MARS Cleaning in writing that the permit and variance are issued at MARS Cleaning's own risk, and in keeping with that admonition,

10

the Parish has abrogated its duty to defend its application process by objectively failing to take any meaningful action to defend the LEAN Lawsuit.

The purpose of a declaratory judgment action is to "afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued." *Rowan Cos. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989). Because MARS Cleaning has pleaded claims under the Declaratory Judgment Act, the inquiry to determine if there is "standing" and if the claim is "ripe" is not the same as if MARS Cleaning had not pleaded its claim under the Declaratory Judgment Act. While the Parish argues that it is unclear if MARS Cleaning has pleaded a declaratory judgment because MARS Cleaning did not request declaratory relief in its prayer for relief, the Complaint is clear that MARS Cleaning is seeking declaratory relief—Paragraph 65 avers in part that "A declaration that Terrebonne Parish may not take MARS Cleaning's property without due process is appropriate  . . .," while Paragraph 69 states that MARS Cleaning "seeks a declaration that any action by the Terrebonne Parish Consolidated government to revoke MARS Cleaning's permit" would constitute an illegal taking. Thus, to the extent that the lack of the specific request for a declaration in the prayer for relief is an issue, the appropriate remedy is for MARS Cleaning to have an opportunity to amend its Complaint to make such request clear. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000).[19]

Clearly, the threat of litigation can be sufficient to establish standing and ripeness for a declaratory judgment action if the threat is specific and concrete. While a plaintiff must still meet the criteria that the threat is real and sufficiently imminent, those criteria can be met when there is

---

[19] The Fifth Circuit has instructed that a plaintiff's failure to meet the specific pleading requirements should not automatically result in the dismissal of the complaint with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n. 6 (5th Cir. 2000). While the decision to allow amendment of a party's pleadings is within the discretion of the district court, a court should not dismiss a claim without granting leave to amend, unless the defect is simply incurable. *See id.* (citing *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir 1991)); *see also Foman v. Davis*, 371 U.S. 178, 182.

a threatened legal action to revoke a permit or to file an adverse action. *See G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1075 (6th Cir. 1994); *Gate Guard Servs. LP v. Solis*, No. V-10-91, 2011 WL 2784447, *12 (S.D. Tex. Jul. 12, 2011).

For example, in *O'Sullivan v. Sunil Gupta, M.D., LLC*, the plaintiff sought a declaratory judgment that the non-compete he signed was invalid even though he had not resigned or begun working for a competitor therefore had not yet breached the agreement. No. 17-609, 2017 WL 1549579 (E.D. La. May 1, 2017). The defendant company argued that the plaintiff did not have standing because the company had not yet filed suit or formally threatened to sue and the plaintiff's fears were therefore merely "speculation and conjecture." *Id.*at *2. The court reasoned that while litigation against the plaintiff was not a certainty, the courts do not require "certainty"—the plaintiff need only show "a specific and concrete threat of litigation." *Id.* The plaintiff had met such burden because the claim that would be asserted against him was "known, specific, and probable" (*i.e.*, that he would be sued for breach of the employment agreement if he worked for a competing practice), it was not necessary that the company explicitly threaten to sue him. The fact that a potential lawsuit hinged on two contingencies—the plaintiff quitting and starting a competing business, did not defeat jurisdiction because the amended complaint alleged that the plaintiff intended to do both things. Finally, the court reasoned that the seriousness of the penalty faced by the plaintiff if he violated the non-compete weighed in favor of allowing the declaratory judgment—he could face substantial damages for a violation *Id.* at 3; *See also Gate Guard*, 2011 WL 2784447, *12-13 (holding that there was standing for a declaratory judgment where the DOL had threatened to instigate enforcement of alleged violations even though the DOL may not institute such actions in the near future); *Boudreaux v. OS Restaurant Servs., LLC*, No. 13-533, 2013 WL 5722714, *5 (E.D. La. Oct. 21, 2013) (Africk, J.).

MARS Cleaning's Complaint sufficiently alleges a real, actual, and imminent threat that the Parish is taking and will continue to take actions to revoke its permit and variance which is sufficient to establish standing. For example, MARS Cleaning pleaded in its Complaint that within minutes after the Parish Council voted to approve MARS Cleaning's permit and variance, the Parish President announced that he would veto the permit and variance – an action that the law does not allow.[20] MARS further alleged in its Complaint that the "Parish President Gordon Dove also stated publicly to the media that he believed that the permit process was not valid because it was 'procedurally incorrect,' and that he would attempt to invalidate MARS Cleaning's permit."[21] MARS further pleaded in its Complaint that the Parish then advised it was seeking to deny MARS Cleaning's Permit and variance by requesting an opinion of the Louisiana Attorney General regarding the method upon which the vote was taken – an unprecedented action to deprive MARS Cleaning of its rights and treating it differently from all other permit and variance applicants.[22] These allegations in MARS Cleaning's Complaint are sufficient to show that the Parish has made actual threats to delay, revoke, or encourage others to file some sort of litigation to revoke MARS Cleaning's permit and variance approved at the November 28, 2018, council meeting.

Standing is even more apparent here than in *O'Sullivan* because the Parish has actually threatened to take legal actions to revoke MARS Cleaning's permit. As the Court explained in *O'Sullivan*, the fact that the Parish has not yet filed a lawsuit seeking to revoke MARS Cleaning's permit and variance does not mean that MARS Cleaning does not have standing to pursue its declaratory judgment action. MARS Cleaning has alleged multiple specific threats by the Parish President and other Parish representatives with authority to harm MARS Cleaning's business

---

[20] Rec. Doc. 5, ¶ 47.
[21] *Id*. ¶ 48.
[22] *Id*. ¶ 50.

13

either to initiate some kind of legal proceeding through the Attorney General Opinion or to veto the permit. These are specific and particularized threats to revoke MARS Cleaning's permit.[23]

The Parish's actions in the LEAN Lawsuit further establish that the dispute between MARS Cleaning and the Parish is ripe for determination and that the threat is immediate and real. MARS Cleaning alleged in its Complaint that the Parish has failed to take action in response to the LEAN Lawsuit. LEAN and Barbara Gibson filed suit solely against the Parish seeking to have the permit and variance issued to MARS Cleaning revoked for alleged violations of the Louisiana Open Meetings Laws. MARS Cleaning pleaded that the Parish has failed to provide assurance that the Parish would defend the LEAN lawsuit and argue that the vote was taken under the proper procedure.[24] Thus, not only is there a real and imminent threat of litigation by the Parish itself to revoke the permit, but there is actual currently pending litigation by another entity seeking to revoke MARS Cleaning's permit on other grounds which the Parish will not confirm that it will vigorously defend and, in fact, is not defending the lawsuit by any meaningful, measurable standard. Thus, the Parish's actions have made clear that there is a real and justifiable anticipation by MARS Cleaning that the Parish will take adverse action regarding its permit and variance such that the dispute between MARS Cleaning and the Parish is not simply hypothetical. While MARS Cleaning does not aver that the Parish is *required* to share its trial strategy with MARS Cleaning regarding the LEAN Lawsuit, the fact that MARS Cleaning pleaded that the Parish is not defending the lawsuit is sufficient to show that there is a real and immediate threat by the Parish regarding MARS Cleaning's permit. It is yet another fact pleaded by MARS Cleaning to establish that the dispute is not "hypothetical" as alleged by the Parish, but sufficiently imminent and concrete.

---

[23] *Id*. ¶¶ 48-50.
[24] *Id*. ¶¶ 47-50.

**4.   MARS Cleaning has Pleaded Sufficient Facts to Establish a Plausible Claim for Due Process Violations**

MARS Cleaning has pleaded a cause of action for a procedural due process claim because it seeks a declaration that the Parish's threats to revoke MARS Cleaning's permit would be done without due process. A procedural due process claim requires that (1) the plaintiff identify the "life, liberty or property interest protected by the 14th Amendment" and then (2) "identify a state action that resulted in a deprivation of that interest. *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995).

As to the first element, the jurisprudence is clear that an issued permit constitutes a property interest for purposes of the due process clause. *Bowlby*, 681 F.3d at 220; *see also State, Dep't of Transp. and Dev. v. Exxon Corp.*, 430 So. 2d 1191, 1195 (La. App. 1 Cir. 1983) (recognizing that a landowner's interest in the business pursuits in his land is a right that flows from property ownership according to the state); *Robinson v. City of Baton Rouge*, No. 13-375, 2015 WL 13522820, *14 (M.D. La. Mar. 20, 2015). Because MARS has pleaded that it was awarded the permit, it has alleged a sufficient property interest to state a claim for a procedural due process violation.[25]

As to the second element, the court looks at three factors to determine if the procedural process was adequate: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the burdens the additional or substitute procedural requirement would entail. *Bowlby*, 681 F.3d at 221. In a case with a similar factual situation, the Fifth Circuit found a procedural due process violation where the plaintiff had been issued a permit to operate

---

[25] *Id*. ¶ 51.

her snow cone stand and the city then revoked her permit at a meeting without giving notice or an opportunity to be heard. *Id.* The Fifth Circuit reasoned that (1) the private interest affected by the action was the plaintiff's ability to operate her business which is an important right, (2) the city did not provide any process prior to revoking the permit which increased the chances of an erroneous deprivation, and (3) while the city may have an interest in regulating business, some sort of pre-deprivation process would not be overly burdensome. *Id.*

Like in *Bowlby*, the right the Parish has threatened to revoke is an important one—without the hazardous waste permit, MARS Cleaning will be unable to operate its business which is decontaminating NORM.[26] Further, MARS Cleaning has alleged in its Complaint that the Parish has threatened to revoke MARS Cleaning's permit either via a procedurally improper veto by the Parish president, or without any opportunity for MARS Cleaning to be heard and based on an attorney general opinion sought by the Parish.[27] These processes would not give MARS Cleaning an opportunity to be heard because MARS Cleaning would not be involved in either the veto or the attorney general opinion. MARS Cleaning has met the pleading standard here to allege facts that it is being deprived of due process. MARS Cleaning is not required to plead every single fact in its Complaint in order to survive a Motion to Dismiss. MARS Cleaning has additional evidence to support its allegations in Paragraph 50 of the Complaint in the form of a letter from counsel for the Parish informing MARS Cleaning that the Parish was seeking an opinion from the Louisiana Attorney General regarding the vote and informing MARS Cleaning that continuing with the construction of the facility would be at MARS Cleaning's "own risk."[28] Additionally, the Parish appears to be neglecting its duty to defend MARS Cleaning's permit as MARS has alleged that

---

[26] *Id*. ¶¶ 6-12, 15-16.
[27] *Id*. ¶¶ 47-50.
[28] *See* Exhibit "A"

the Parish has not confirmed it will defend the lawsuit.[29] The Parish is required to have its attorneys defend the LEAN Lawsuit. *See* La. Rev. Stat. 16:2. Further discovery would likewise support these factual allegations as the progress of the LEAN Lawsuit shows that the Parish continues to fail to take necessary and appropriate actions to have the LEAN Lawsuit dismissed including a failure to issue any discovery. Last, like in *Bowlby*, while the Parish certainly has an interest in regulating businesses, it would not be burdensome to put in place some procedural safeguards like allowing MARS to provide input on the requested attorney general opinion or requiring the Parish to go through appropriate (if any) administrative hearings to revoke MARS Cleaning's permit.

5. **Under *Knick v. Township of Scott, Pennsylvania* MARS Cleaning is not Required to First Seek Redress from the State for the Parish's Taking**

Likely inadvertently, the Parish failed to disclose controlling precedent that was issued about three weeks before the Parish filed its Motion to Dismiss, thereby mooting its argument that MARS Cleaning's "taking claim should be dismissed because it is not justiciable."[30] Under the U.S. Supreme Court's June 21, 2019, decision in *Knick v. Township of Scott, Pennsylvania*, MARS Cleaning is not required to pursue state court remedies for the taking prior to filing a federal court suit seeking compensation for the taking. 139 S.Ct. 2162, 2179 (2019). Under the law prior to *Knick*, a property owner "whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights—and thus cannot bring a federal takings claim in federal court, until a state court has denied his claim for just compensation under state law." *Id.* at 2167 (citing *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)). However, in *Knick* the Supreme Court held that "the state-litigation requirement of *Williamson County* is overruled. A property owner may bring a takings claim under §1983 upon

---

[29] Rec. Doc. 5, ¶ 55.
[30] Rec. Doc. 11-11, p. 12.

the taking of his property without just compensation by a local government." *Id.* Thus, the Parish's argument that MARS Cleaning's takings claim is not ripe or justiciable because "a plaintiff in Louisiana must first seek compensation in state court . . ."[31] was perhaps arguable before this recent Supreme Court ruling, but now it is unquestionably incorrect.

Further, MARS Cleaning is permitted to file a declaratory judgment action regarding a taking. The U.S. Supreme Court has held unequivocally that the Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed government action before potentially uncompensated damages are sustained." *Duke Power Co. v. Carolina Environmental Study Grp., Inc.*, 438 U.S. 59, 71 n. 15 (1978). As MARS Cleaning has explained above, MARS Cleaning has a legitimate fear that the Parish will take action to revoke its permit and variance. Thus, MARS Cleaning is entitled to file this declaratory judgment action to seek a ruling from this court that if the Parish takes the threatened actions it will constitute a taking of MARS Cleaning's property without compensation.

As explained above, MARS Cleaning has been threatened repeatedly with the unconstitutional regulatory taking of its property via the threats of the Parish to revoke the permit or take steps to not defend the invalidation of the permit issued to MARS Cleaning.[32] The Parish President has threatened to veto MARS Cleaning's permit and has taken other actions to indicate that he will attempt to, by legal or other process, have MARS Cleaning's permit revoked.[33] MARS Cleaning has sufficiently stated a claim to establish a "regulatory taking" of its property pursuant to the *Penn Central Transp. Co. v. City of New York* line of cases. Under *Penn Central*, the factors to determine if a regulatory taking occurs include (1) the economic impact of the regulation on the

---

[31] *Id.*
[32] Rec. Doc. 5, ¶¶ 47-55.
[33] *Id.* ¶ 48.

claimant, (2) the extent to which the regulation has interfered with distinct investment back expectations, and (3) the character of the governmental action. *Penn Central*, 438 U.S. 104, 124 (1978). The regulatory taking inquiry depends on the "justice and fairness of the governmental action" and is fact intensive. As such, the claim for a regulatory taking is "seldom" appropriate for dismissal on the pleadings.  *White Oak Realty, LLC v. United States Army Corp of Engineers*, No. 13-4761, 2014 WL 4387317, *9 (E.D. La. Sept. 2, 2014) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 332 (2002) and *McDougal v. Cnty of Imperial*, 942 F.2d 668, 676 (9th Cir. 1991)).

In a factually similar case, *Robinson v. City of Baton Rouge*, the court denied a motion to dismiss under Rule 12(b)(6) on the regulatory taking where the plaintiffs had alleged that they would be deprived of the use of the property when the planning commission arbitrarily and capriciously denied the preliminary plat for the plaintiff's proposed subdivision. 2015 WL 13522820 (M.D. La. Mar. 20, 2015). The court reasoned that the allegation that the plaintiff would be deprived of all beneficial uses of the property was by itself sufficient to state a claim for a regulatory taking. *Id.* at *9.

Here, MARS Cleaning pleaded that the actions of the Parish would constitute a taking because it would lose income and profit if the Parish arbitrarily and illegally revokes its permit.[34] If this Court finds that MARS Cleaning's complaint is not sufficient, the appropriate remedy on a 12(b)(6) motion would be to allow MARS Cleaning to amend its complaint to add the appropriate details necessary. *See Hart*, 199 F.3d at 247 n. 6. However, MARS Cleaning believes that is allegations that the actions of the Parish would deprive it of its ability to gain profit from its property is sufficient to state a claim for the regulatory taking under the broad standards of the

---

[34] *Id*. ¶ 69.

court—a case such as this one that requires determination of facts is not ripe for dismissal at the pleadings stage.

6. **MARS has Stated a Claim for a Violation of Equal Protection**

At the outset of MARS Cleaning's arguments against the Parish's argument that there has not been a sufficient equal protection claim alleged, the Parish repeatedly states that this claim "should be dismissed because such claims are not available for *discretionary* actions like the Parish's decision here."[35] The discretionary action that the Parish repeatedly references is the discretion afforded to the Parish Council under the ordinances to grant a variance. Indeed, the Parish quotes from the relevant ordinance, which provides, "a variance shall be issued *solely at the discretion of the council*" and only after other criteria are met.[36]

This focus on the discretion to grant the variance wholly misses the point. The Parish has already issued the permit and variance to MARS Cleaning and thus whether the Parish had the discretion to grant or deny the variance has nothing to do with MARS Cleaning's claims in this lawsuit. This lawsuit pertains to the Parish's action *after* the favorable 5-4 vote granting the application for a permit and variance for which the Parish does *not have discretion* to treat MARS Cleaning differently from other citizens. The Parish simply confuses the issue. Indeed, for the Parish's argument to survive, the Parish would need to establish that the Parish has the discretion to revoke the permit and variance at any time *after* it is granted, but that does not appear to be an argument the Parish is making, nor is there any legal support for such a position that the Parish, after an affirmative vote by the Parish Council to approve a permit, can use some kind of executive discretion to revoke a permit and variance. Simply put, the Parish's extensive argument regarding

---

[35] Rec. Doc. 11-1, pp. 15, 16 (emphasis added).
[36] *Id*. (emphasis in original)

the unavailability of equal protection to a *discretionary* function simply has no application here because it misses the point.

    As to what MARS Cleaning actually pleaded, it has pleaded sufficient facts to establish that it is entitled to a declaratory judgment that it will be deprived of equal protection if the Parish acts as it has threatened to do and continues to act to see that MARS Cleaning's permit and variance are revoked, while not so acting for the same permits and variances for similarly situated entities. The Parish makes much ado about MARS Cleaning as a "class of one," but the U.S. Supreme Court has held that a successful equal protection claim can be brought by a "class of one" where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In *Village of Willowbrook v. Olech*, the Supreme Court held that a plaintiff had sufficiently stated a claim for violation of the equal protection clause to survive a 12(b)(6) motion when she alleged that village's demand for a 33-foot easement instead of the usual 15 foot easement was irrational and wholly arbitrary and was motivated by the ill will of the plaintiff having filed a prior lawsuit against the village. *Id.* at 563.

    Here, MARS Cleaning's allegations are similar. MARS Cleaning has alleged that there are other similarly situated facilities in Terrebonne Parish that have the same permit and variance which was approved before and after MARS Cleaning's permit, but against whom the Parish has not taken steps to revoke the permits of even though the permits were issued under the same allegedly "incorrect" procedure as MARS Cleaning's permit.[37] While MARS Cleaning did not name all of the companies in its Complaint, its allegation is sufficiently specific so that the Parish could easily determine who the companies actually are under this Court's notice pleadings

---

[37] Rec. Doc. 5, ¶¶ 51, 59-61.

requirements. These allegations are sufficient to establish that (1) the Parish has treated MARS Cleaning differently from similarly situated entities and that (2) the Parish has acted without a basis in seeking to revoke MARS Cleaning's permit. Indeed, the allegations in the Complaint allege that the Parish was and is acting without any reason for its decisions, but based solely on perceived public opposition to the application or based on a financial interest in a competing company.[38] MARS has resorted to this Court to obtain a declaration that the Parish cannot and should not arbitrarily treat MARS Cleaning differently from other similarly situated entities and at this preliminary stage, MARS Cleaning's allegations are sufficient to establish a cause of action. To the extent that this Court believes that the Complaint does not sufficiently allege that the motive of the Parish was without reason or improper, MARS Cleaning avers it would be appropriate to allow MARS to amend its Complaint to clarify such allegations. *See Hart*, 199 F.3d at 247, n. 6.

### 7. <u>This Court has Supplemental Jurisdiction over MARS Cleaning's State Law Claims</u>

This Court has supplemental jurisdiction over MARS Cleaning's state law claims relating to Counts 4 and 5—whether the Parish is preempted from regulating NORM and whether NORM is considered a hazardous waste such that the Parish ordinances require MARS Cleaning to obtain a permit for such. The Parish wrongly argues that MARS Cleaning does not have standing to obtain a declaratory judgment on these two issues.[39] A declaratory judgment action is available to challenge a law or regulation even where the person seeking such a declaration has not yet violated the law or regulation. *O'Sullivan*, 2017 WL 1549579, at *2. Thus, although MARS Cleaning has been issued the permit, the imminent threat that the parish will revoke the permit is sufficient to establish standing for the Court to review the issue of whether NORM is considered a hazardous waste and whether the Parish is preempted from regulating NORM.

---

[38] *Id*. ¶¶ 24, 31, 49-51.
[39] Rec. Doc. 11-1, Section F(1).

A court should not dismiss a declaratory judgment action simply because it does not involve a question of federal law. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001) (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)). The court should consider the seven factors to determine if a declaratory judgment should be dismissed under the court's discretionary ability to abstain from hearing cases: "[1]] whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, ... 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy, ... [and 7)] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Id.* (quoting *Trejo*, 39 F.3d at 590-91) (alterations in original).

Here, the seven factors do not weigh in favor of the Court declining jurisdiction of the state law counts. The Parish points out that there is pending litigation between MARS Cleaning and the Parish that raise these two causes of action. At the time this lawsuit was filed, more than ninety days had elapsed from the filing and MARS Cleaning had not served Terrebonne Parish and did not intend to serve the Parish. Although MARS Cleaning sought to dismiss that suit without prejudice, the Parish oddly objected seeking to retain the case in state court. While the District Court denied MARS Cleaning's Motion to Dismiss Without Prejudice after only a declinatory exception of improper service had been filed, MARS Cleaning has filed an application for a supervisory writ requesting the First Circuit Court of Appeal reverse that decision and dismiss the

case without prejudice.  Given that it is far from clear that there will be a state court cases pending on the same issues, it would be premature for this court to dismiss the declaratory judgment action on those grounds.

As to the second and third factors factor, MARS Cleaning brought this lawsuit for declaratory judgment based on the threats by the Parish that it would, either through a lawsuit or other means revoke MARS Cleaning's permit, although the Parish has not threatened to file a lawsuit on these two particular causes of action. In any event, as the Fifth Circuit explained in *Sherwin-Williams Co. v. Holmes County*, "declaratory judgment actions often involve permissible selection of a federal forum over an available forum, based on the anticipation that a state court suit will be filed." 343 F.3d 383, 398 (5th Cir. 2003). There, analyzing the *Trejo* factors, the court concluded that it was not "impermissible procedural fencing" for Sherwin-Williams to file a lawsuit anticipating that a state court suit would be filed because it would allow all of the issues to be decided in a single forum. *Id.* Further, "improper procedural fencing" has been described as where the plaintiff files a declaratory judgment action to try to select which state's law will apply to the dispute. *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015). Such a factor is not present here. Further, MARS Cleaning did not file these two state claims in federal court as a means of forum shopping or because the Parish threatened to file suit against MARS Cleaning on these two particular issues. Rather, believing that its state court suit was null or that it would be shortly dismissed without prejudice, MARS sought to consolidate all of the issues relating to its permit into a single suit. By contrast, the Parish apparently seeks to have a multiplicity of suits by seeking to force MARS Cleaning to litigate against it in both state and federal court. Such would simply not be rational. Thus, these factors weigh in favor of retaining jurisdiction.

Regarding the fourth factor, there is no inequity in allowing MARS Cleaning to file this suit in federal court as opposed to in state court. The federal court will apply substantive state law to these claims which is a common occurrence, thus there is no inequity in allowing MARS Cleaning to litigate these issues on a declaratory judgment. Fifth, this forum is no less convenient than Terrebonne Parish. MARS Cleaning filed suit in the federal judicial district which covers Terrebonne Parish, and the Parish's counsel is located in New Orleans near the federal courthouse. As to the sixth factor, judicial economy would be served by allowing this declaratory judgment suit to go forward. As MARS Cleaning has explained, the state court litigation is based on the 2017 vote and not the 2018 vote and has a strong possibility of being dismissed. Thus, at best this factor is neutral or should not be considered until the First Circuit Court of Appeal issues is ruling on MARS Cleaning's Writ Application. Finally, the seventh factor is inapplicable here as there is no state court order to be interpreted by the court. In sum, the factors weigh in favor of this Court retaining jurisdiction over these issues to allow all of the disputes to be decided in a single forum.

Respectfully submitted:

**/s/ Gavin H. Guillot**
Gavin H. Guillot, T.A. (#31760)
Aaron B. Greenbaum (#31752)
Elizabeth B. McIntosh (#36575)
**PUSATERI, JOHNSTON, GUILLOT &
GREENBAUM, LLC**
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: 504-620-2500
Facsimile: 504-620-2510
Gavin.Guillot@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Elizabeth.McIntosh@pjgglaw.com
Attorneys for Plaintiff, M.A.R.S. Cleaning Services, LLC